**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAURY MAYOLL, Individually and for Others Similarly Situated | **Case No. 1:26-cv-335** |
| v. | Jury Trial Demanded |
| VENTURE GLOBAL LNG, INC. and GRAY WOLF INTEGRATED CONSTRUCTION COMPANY | FLSA Collective Action |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Amaury Mayoll (Mayoll) brings this collective action to recover unpaid wages and other damages from Venture Global LNG, Inc. (Venture Global) and Gray Wolf Integrated Construction Company (Graywolf) (collectively Defendants).

2.      Defendants employed Mayoll as one of their Hourly Employees (defined below) in Port Sulphur, Louisiana.

3.      Mayoll and the other Hourly Employees regularly work more than 40 hours a week.

4.      But Defendants do not pay Mayoll and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for hours over 40 in a week.

5.      Instead, Defendants pay Mayoll and the other Hourly Employees "per diems," not reasonably calculated to reimburse expenses and based on time worked, but Defendants exclude these "per diems" from their regular rates of pay for overtime purposes (Defendant's "per diem pay scheme").

6.      Defendants' per diem pay scheme violates the Fair Labor Standards Act (FLSA) by failing to compensate Mayoll and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 each workweek.

**JURISDICTION & VENUE**

7.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8.      This Court has personal jurisdiction over Defendants based on their substantial contacts with and business done in Virginia, including work and communications relating to their joint work on the Plaquemines Parish LNG facility, and registering to do business, hiring and employing numerous employees, and maintaining offices in Virginia.

9.      Venue is proper because Venture Global maintains its principal place of business in Arlington, Virginia, which is in this District and Division. 28 U.S.C. § 1391(b).

**PARTIES**

10.     Defendants employed Mayoll as a pipefitter from approximately November 2024 until May 2025.

11.     Throughout his employment, Defendants paid Mayoll under their per diem pay scheme.

12.     Mayoll's written consents are attached as **Exhibit 1**.

13.     Mayoll brings this collective action on behalf of himself and similarly situated employees employed by Defendants.

14.     The putative FLSA collective is defined as:

> **All hourly employees who worked for Defendants in Louisiana and were paid under their per diem pay scheme during the last three years through final resolution of this action (the "Hourly Employees").**

15.     Graywolf is a Delaware corporation with its principal place of business in Owensboro, Kentucky.

16.     Graywolf may be served with process by serving its registered agent: **Corporation Service Company, 100 Shockoe Slip Fl. 2, Richmond, Virginia 23219.**

17.     Venture Global is a Delaware corporation with its principal place of business in Arlington, Virginia.

18.     Venture Global may be served with process by serving its registered agent: **C T Corporation System, 4701 Cox Rd., Ste. 285, Glen Allen, Virginia 23060.**

19.     Graywolf and Venture Global jointly imposed common policies and practices on the Hourly Employees, for example, by jointly deciding and controlling the Hourly Employees' compensation practices, including the per diem pay scheme.

## FLSA COVERAGE

20.     At all relevant times, Defendants were "employers" within the meaning of the FLSA. 29 U.S.C. § 203(d).

21.     At all relevant times, Defendants were "enterprises" within the meaning of the FLSA. 29 U.S.C. § 203(r).

22.     At all relevant times, Defendants were "enterprise[s] engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because they had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

23.     At all relevant times, Defendants each had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

24.     At all relevant times, Mayoll and the other Hourly Employees were Defendants' "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

25.    At all relevant times, Mayoll and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

26.    Graywolf touts that its "expertise in design, fabrication and construction ensures [ ] upstream, midstream and downstream projects are designed for constructability, sidestep risk through the lifecycle of the project, while being performed with the highest level of safety standards."[1]

27.    Venture Global holds itself out as a "low-cost provider of American-produced liquefied natural gas … [with] four Louisiana-based export projects service[ing] the global demand for North American natural gas."[2]

28.    Venture Global contracted and works with Graywolf to collaborate in providing labor to construct Venture Global's Port Sulfur, Louisiana liquefied natural gas facility.

29.    To meet this shared business objective, Defendants employ workers, including Mayoll and the other Hourly Employees.

30.    For example, Defendants employed Mayoll as a pipefitter in Port Sulphur from approximately September 2024 until May 2025.

31.    Mayoll's job duties included cutting, fitting, and installing pipe in the facility.

32.    Throughout his employment, Mayoll has regularly worked more than 40 hours in a workweek.

33.    Indeed, Mayoll typically worked approximately 12 hours a day for 6 days a week (72 hours a workweek).

---

[1] https://www.graywolf.com/markets/oil-gas/ (last visited February 2, 2026).
[2] https://ventureglobal.com/about-us/ (last visited February 2, 2026).

34.     Defendants paid Mayoll approximately $42 an hour.

35.     Likewise, the other Hourly Employees typically worked approximately 12 hours a day and 6 days a week (72 hours a workweek).

36.     And Defendants record Mayoll's and the other Hourly Employees' "on the clock" hours through their timekeeping system.

37.     At the end of each pay period, Mayoll and the other Hourly Employees receive wages from Defendants that are determined by common systems and methods that Defendants select and control.

38.     But Defendants do not pay Mayoll and the other Hourly Employees at the required overtime rates for all hours worked in excess of 40 a workweek.

39.     Instead, Defendants pay Mayoll and the other Hourly Employees under its per diem pay scheme.

40.     Specifically, Defendants agreed to pay and subsequently paid Mayoll and the other Hourly Employees "per diems" based on the number days they actually work, unrelated to expenses incurred.

41.     And Mayoll and other Hourly Employees commuted to and from their permanent residences each workday, but Defendants nonetheless paid them "per diems," despite incurring no travel expenses beyond their commute to and from home.

42.     But Defendants excluded these "per diems" from Mayoll's and the other Hourly Employees' regular rates of pay for overtime purposes during workweeks in which they earned the "per diems" and worked in excess of 40 hours.

43.     Defendants therefore violate the FLSA by failing to pay Mayoll and the other Hourly Employees overtime wages of at least 1.5 times their true regular rates of pay for all hours worked in excess of 40 in a workweek.

- 5 -

## COLLECTIVE ACTION ALLEGATIONS

44.     Mayoll brings his claims as a collective action under Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

45.     Like Mayoll, the other Hourly Employees are victimized by Defendants' per diem pay scheme.

46.     Other Hourly Employees worked with Mayoll and indicated they were paid in the same or similar manner under Defendants' per diem pay scheme.

47.     Based on his experience with Defendants, Mayoll is aware their shared per diem pay scheme was imposed on other Hourly Employees.

48.     The Hourly Employees are similarly situated in the most relevant respects.

49.     Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked.

50.     Therefore, the specific job titles or locations of the Hourly Employees do not prevent collective treatment.

51.     Rather, Defendants' joint per diem pay scheme renders Mayoll and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rates for all overtime hours worked.

52.     Defendants' records reflect the number of hours it recorded the Hourly Employees working "on the clock" each week.

53.     Defendants' records also show it paid the Hourly Employees "per diems" (that were actually wages) they excluded from their regular rates of pay for overtime purposes.

54.     The back wages owed to Mayoll and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

55.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendants' records, and there is no detraction from the common nucleus of liability facts.

56.     Therefore, the issue of damages does not preclude collective treatment.

57.     Mayoll's experiences are therefore typical of the experiences of the other Hourly Employees.

58.     Mayoll has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

59.     Mayoll has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal law.

60.     Mayoll and his counsel will fairly and adequately protect the interests of the Hourly Employees.

61.     Mayoll retained counsel with significant experience in handling complex collective action litigation.

62.     Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Defendants will reap the unjust benefits of violating the FLSA.

63.     Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

64.     Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and Defendants.

65.     Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

66.     The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

67.    Among the common questions of law and fact are:

    a.    Whether Defendants paid the Hourly Employees "per diems" based on time worked and/or unrelated to expenses incurred;

    b.    Whether Defendants failed to include the "per diems" in calculating the Hourly Employees' regular rates of pay;

    c.    Whether Defendants failed to pay the Hourly Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours;

    d.    Whether Defendants' decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

    e.    Whether Defendants' violations were willful.

68.    As part of its regular business practices, Defendants intentionally, willfully, and repeatedly violated the FLSA with respect to Mayoll and the other Hourly Employees.

69.    Defendants' per diem pay scheme deprived Mayoll and the other Hourly Employees of the overtime wages at the required premium rate—based on all remuneration—they are owed under federal law.

70.    There are many similarly situated Hourly Employees who have been denied overtime pay at the required rate—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

71.    The Hourly Employees are known to Defendants, are readily identifiable, and can be located through Defendants' business and personnel records.

### DEFENDANTS' VIOLATIONS WERE WILLFUL

72.    Defendants knew they employed Mayoll and the other Hourly Employees.

73. Defendants knew they were subject to the FLSA's overtime provisions.

74. Defendants knew the FLSA requires them to pay non-exempt employees, including Mayoll and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

75. Defendants knew Mayoll and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because it recorded these employees' "on the clock" hours worked via its timekeeping system.

76. Defendants knew Mayoll and the other Hourly Employees were non-exempt employees entitled to overtime pay.

77. Defendants knew they paid Mayoll and the other Hourly Employees "per diems."

78. Defendants knew these "per diems" were required to be but were not included in Mayoll's and the other Hourly Employees' regular rates of pay for overtime purposes.

79. And Defendants knew the FLSA requires them to pay Mayoll and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

80. Defendants' failure to pay Mayoll and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

81. Defendants knew their conduct violated the FLSA.

82. Defendants knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful per diem pay scheme that deprived Mayoll and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek.

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

83.    Mayoll brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

84.    Defendants jointly violated, and are violating, the FLSA by employing non-exempt employees such as the Hourly Employees in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

85.    Defendants' unlawful conduct harmed the Hourly Employees by depriving them of the overtime wages they are owed.

86.    Accordingly, Defendants owe the Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

87.    Because Defendants knew or showed reckless disregard for whether this per diem pay scheme violated the FLSA, Defendants owe the Hourly Employees these wages for at least the past 3 years.

88.    Defendants are also liable to the Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

89.    Finally, the Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### JURY DEMAND

90.    Mayoll demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Mayoll, individually and on behalf of the other Hourly Employees, seeks the following relief:

    a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Hourly Employees allowing them to join this action by filing a written notice of consent;

    b.    An Order finding Defendants jointly liable to Mayoll and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA plus an equal amount as liquidated damages;

    c.    A Judgment against Defendants awarding Mayoll and the Hourly Employees all their unpaid wages, liquidated damages, and any other penalties available under the FLSA;

    d.    An Order awarding attorney's fees, costs, and expenses;

    e.    Pre- and post-judgment interest at the highest applicable rates; and

    f.    Such other and further relief as may be necessary and appropriate.

Date:   February 4, 2026

Respectfully submitted,

**BUTLER CURWOOD, PLC**

By: _/s/  Zev H. Antell_____
Craig J. Curwood VSB No. 43975
Zev H. Antell VSB No. 74634
Samantha R. Galina VSB No. 96981
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Phone: (804) 648-4848
Fax:    (804) 237-0413
craig@butlercurwood.com
zev@butlercurwood.com
samantha@butlercurwood.com

Michael A. Josephson*

- 11 -

TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice forthocming*

**ATTORNEYS FOR MAYOLL AND THE HOURLY EMPLOYEES**